Filed 2/21/24  P. v. Murdoch CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B319573 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. NA020621-02 |
| CHARLES FRANKLIN MURDOCH, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

Forty years ago, Charles Franklin Murdoch, Jr. and Dino Dinardo robbed the Horseshoe Bar in Long Beach. During the robbery, bar patron Robert Nantais was shot and killed. In 1995 a jury convicted Murdoch of the first degree murder of Nantais. In 2020 Murdoch petitioned for resentencing under Penal Code section 1172.6.[1] After an evidentiary hearing, the superior court denied Murdoch's petition. On appeal, Murdoch contends the court erred by relying on the facts summarized in the opinion on direct appeal rather than the trial transcripts themselves.

We affirm because Murdoch's counsel not only did not object to the court's consideration of the appellate opinion— he essentially stipulated to it as a correct statement of what happened. Moreover, in any event, the testimony at Murdoch's trial establishes, beyond a reasonable doubt, that he was— at a minimum—a major participant in the underlying robbery and burglary who acted with reckless indifference to human life.

**FACTS AND PROCEDURAL BACKGROUND**

1. ***Robert Nantais is shot and killed at the Horseshoe Bar***[2]

On May 17, 1983, Dino Dinardo and Murdoch "came across each other" in Dinardo's neighborhood. Dinardo had known

---

[1] References to statutes are to the Penal Code. Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2] We take our statement of facts from the testimony at Murdoch's trial. We previously granted Murdoch's Request for Judicial Notice attaching the reporters' and clerk's transcripts from the trial.

Murdoch in the 1970s.  Murdoch was with another person.[3]
Murdoch asked Dinardo if he wanted to make some money.
Dinardo asked how.  Murdoch said something about "do[ing]
a job"; he said, "I know this place where we can make some
money," and "we need your help."  Knowing Murdoch as he did,
Dinardo understood "it must have meant a hold-up or something
. . . or some type of thievery involved."  Dinardo asked, "[H]ow
[are] we going to do this," and "they replied, well, with a gun, and
the one guy was going to carry a knife."  They said they needed
Dinardo to go in the front, and then when they had "everyone
covered," to grab the cash out of the cash register.  Murdoch
told Dinardo no one was going to get hurt.

Dinardo, Murdoch, and the second man got into a car
driven by a third man.  They drove to the alley behind the
Horseshoe Bar.  Dinardo and the second man went into the bar
from the front and stood by a pinball machine.  Murdoch entered
from the rear a minute or two later.[4]  Murdoch said, "Don't
nobody move."  He said something like, "This is a stick-up
or a robbery."  "That was [Dinardo's] cue to grab the money."
"[R]ight after" that, Dinardo heard a gunshot.

Dinardo was "pretty scared"; he jumped over the bar and
tried to get the cash register open.  Dinardo finally got the cash
register open, took out the money, put it in his pockets, and went

---

[3]     This second man apparently never has been identified.
We'll refer to him as the second man.

[4]     Dinardo testified Murdoch had a .22 caliber rifle in his
hands when he came into the bar.  As discussed below, the jury
found the allegation that Murdoch personally used a firearm
in the commission of the crime not true.

out the back door.  Dinardo, Murdoch, and the other two men split the money—approximately $200—four ways.

Dyanne Spence was working at the Horseshoe Bar that night as a bartender.  Around 9:00 p.m. Spence was talking to a man named Edward Snow.  She "noticed movement" behind Snow.  She "glanced that way" and saw a rifle being pointed toward Nantais.  When asked at trial if she saw the man in court who'd had the rifle, Spence answered, "[D]efinitely," and identified Murdoch.  She said, "He has piercing dark eyes and the frightening look."

After the rifle "went off," Spence heard someone say, " 'This is a robbery.' "  According to Spence, Murdoch then pointed the rifle at her and said, " 'Don't look at me.  I will blow your f-ing head off.' "  Murdoch was 13 or 14 feet from Spence.  Snow told Spence to put her hands on the bar and look at the floor.  Spence "[s]tarted to glance down but [she] looked directly at Mr. Murdoch's eyes because there was a rifle pointed in [her] face."  Spence glanced to her right and saw a man "being stabbed numerous times."

One of the men took cash from the register.  After the men left, Spence called the police.  Paramedics arrived very quickly.  Spence gave police a description of the perpetrators.  Spence said the man with the rifle had "[d]ark piercing eyes"; he was wearing a white t-shirt, a military-style cap, and military boots.  "The eyes were the main thing."  Spence told police the man who took money from the cash register had "longish, stragglish blond hair."

Police showed Spence a number of photographs.  She was not able to identify anyone.  She told them "it would help if [she] saw a lineup or in person so [she] could look at his eyes and movement."

Carol Halliburton was also in the Horseshoe Bar that night.  She was sitting at the bar with Nantais.  She heard a

male voice say—"in a very controlling, loud manner"—" 'Don't look at me.' " Halliburton turned around to her right and looked back. She saw a man holding a sawed-off rifle. Nantais "was slumping over"; he whispered, " 'Call the ambulance.' "

At trial, Halliburton testified Murdoch "look[ed] very similar" to the man with the rifle. When asked in what way he looked similar, Halliburton answered, "He has peculiar eyes," adding, "It's just something you can't forget."

James Hall was at the Horseshoe Bar that night as well. At trial, Hall testified that trying to recall what happened that night was "like trying to remember a bad dream." Hall said he'd noticed "a Latino looking person" on his right, and "he had a small handgun," "like a .38." Hall was "blank on the rest of it."

Hall "woke up on the table" in the hospital. He suffered "[t]wo stab wounds," "[o]ne to the spine and one over to the kidney area." Hall's arm also was wounded. When he woke up, "[t]hey were sewing up [his] elbow."

When asked if he saw the man in the courtroom who'd been to his right, Hall replied, "No. . . . The one I saw was more light." Hall attended a live line-up but was unable to make an identification.

## 2. *Murdoch's arrest, the charges, trial, and verdicts*

The case remained unsolved for more than a decade. Some 11 years after the crimes were committed, authorities finally acquired the technology to process latent fingerprints found on the coin tray of the cash register at the bar. The prints led authorities to Dinardo. Police arrested him in Berkeley in June 1994. Dinardo admitted he'd been involved in the crimes. Dinardo implicated Murdoch.

After authorities arrested Murdoch, Spence attended a live line-up in September 1994. She identified Murdoch. Spence wrote, " 'I think it's him. I'm not sure.' " At trial Spence

explained, "I went right to him, knowing it was him, but I was afraid." At trial, the prosecutor stood behind Murdoch and asked Spence, "[T]aking a look at the person I'm standing behind, are you positive that this is the person that came into the bar on May 17th, 1983, pointed a rifle at you, and shot Robert Nantais?" Spence replied, "Beyond a shadow of a doubt."

The People charged Murdoch and Dinardo with the murder of Nantais and the attempted murder of Hall. The People alleged the defendants committed the murder while engaged in the commission of burglary and robbery. The People also alleged Murdoch personally used a firearm—a rifle—in the commission of the murder, and a principal was armed with a firearm—a rifle—in the commission of both the murder and the attempted murder.

Dinardo was tried first, convicted, and sentenced to 25 years to life. Dinardo later entered into an agreement with the prosecution to testify truthfully at Murdoch's trial in exchange for a reduction of his offense to voluntary manslaughter and a sentence of 12 years (11 years for the offense and one year for the firearm enhancement).

At trial, a coroner testified Nantais was shot on the right side of his back. The bullet pierced his carotid artery and exited through the left side of his neck. That gunshot wound was fatal.

On December 28, 1995, a jury convicted Murdoch of both the murder and the attempted murder. The jury found the special circumstances true: that the murder was committed while Murdoch was engaged in burglary and robbery. The jury also found true the allegation that, in the commission of the offense, a principal was armed. However, the jury found not true the allegation that Murdoch had personally used a firearm in the commission of the murder. The trial court sentenced Murdoch to life without parole on the murder count,

6

plus one year for the principal armed enhancement, and to life on the attempted murder count, to be served concurrently with the murder sentence.

On March 25, 1998, a different panel of this court affirmed Murdoch's conviction on the murder count but reversed his conviction on the attempted murder count as barred by the statute of limitations. (*People v. Murdoch* (Mar. 25, 1998, B100877) [nonpub. opn.] (*Murdoch I*).)

### 3. *Murdoch's petition for resentencing*

On September 18, 2020, Murdoch filed a petition for resentencing. On a preprinted form, Murdoch checked boxes stating the information had "allowed the prosecution to proceed under a theory of felony murder," he'd been convicted at trial of "1st or 2nd degree murder [under] the felony murder rule," and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Murdoch also checked box 5 and all of its subparts, stating he "could not now be convicted" under those changes to the Penal Code because he was "not the actual killer," he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree," and he "was not a major participant in the felony or [he] did not act with reckless indifference to human life during the course of the crime or felony." In addition, Murdoch wrote in, "There is no evidence in the record that I did any of the above acts," and "My jury on 12-28-95 specifically found me NOT GUILTY of P.C. § 12022.5(a)."

Murdoch also checked box 7, stating, "There has been a prior determination by a court or jury that I was not a major participant and/or did not act with reckless indifference to human life under Penal Code § 190.2(d). Therefore, I am entitled to be

7

re-sentenced pursuant to § 1170.95(d)(2)." Murdoch wrote in, "Jury found me <u>NOT GUILTY</u> of the charged P.C. § 12022.5(a) allegation." Murdoch checked box 4 asking the court to appoint counsel for him, adding, "Please do NOT appoint original counsel Peacock to my case. Please appoint the Public Defender."[5]

The superior court appointed bar panel attorney Kieran P. Brown to represent Murdoch. On November 10, 2020, the prosecution filed its response to Murdoch's petition. The prosecution took its "statement of the case" from *Murdoch I*, the opinion on direct appeal. The prosecution asserted the court could "consider any evidence that is part of the 'record of conviction,' " including the information, the preliminary hearing transcript, and the "appellate record and opinion affirming the judgment," citing *People v. Woodell* (1998) 17 Cal.4th 448, 451.

Brown apparently filed a reply to the prosecution's response but it is not part of the appellate record. Murdoch's appellate counsel sent a letter to the superior court dated August 24, 2022, noting the record was incomplete and asking the court to certify and transmit that document to the court of appeal with copies to counsel. On September 1, 2022, a deputy clerk for the superior court issued a certificate stating the court file, courtroom, clerk's office, and archives had been searched and the documents "were not located."

After several continuances, the parties appeared before the court on April 4, 2022. Murdoch was present. The court stated,

---

[5] The Office of the Alternate Public Defender represented Murdoch from at least December 1994 until July 14, 1995. On that date, the Alternate Public Defender's office declared a conflict and the trial court appointed bar panel attorney Stephen Peacock.

8

"My understanding is even though . . . a jury found the special circumstance to be true in this matter, that I still have to have an OSC under the current law."  The court continued, "I have read the summary of the facts.  I received a disk on Friday but I was not here.  So I guess I shouldn't say I personally received it."  The court said, "I haven't reviewed the disk.  My understanding is it's just the transcripts and the appellate opinion, but I have read the People's summary of the appellate opinion."

The court then asked Murdoch's counsel, "Mr. Brown, do you have any difference of opinion?"  Counsel replied, "No, Your Honor.  It's accurate."  Counsel continued, "It's important to note that . . . while the jury found the special circumstance true, they found the personal use of a gun not true in this case, but he was convicted and clearly was under felony murder.  So the issue is whether or not he is ineligible because he was the actual killer or acted with reckless disregard, et cetera."

The prosecutor told the court the disk "that was provided does contain the appellate opinion and the clerk's records and the reporter's transcripts."  The prosecutor asked the court to "receive the disk as Exhibit 1."  The prosecutor continued, "In terms of the opinion, I would ask that the court only consider the procedural history portion of that opinion."

The prosecutor argued Murdoch was the actual killer or, in the alternative, "he is also guilty pursuant to felony murder laws as they are constituted today."  The prosecutor stated Spence identified Murdoch as the shooter.  Spence testified, the prosecutor said, that she saw Murdoch point a rifle at Nantais, that he "personally shot" Nantais, and that he then announced to everyone else present, " 'This is a robbery.' "

The prosecutor noted Murdoch "came up with the idea to do this particular robbery," and he asked Dinardo if he wanted to " 'make money by doing a job.' "  The prosecutor concluded,

"So based on the strength of the evidence that is contained in the clerk's transcripts, Your Honor, and in the reporter's transcripts and in the procedural portion of the opinion, the prosecution would ask that this court find beyond a reasonable doubt that the petitioner is the actual killer of Mr. Nantais and . . . is not entitled to resentencing pursuant to 1170.95."

Brown responded, "I would agree with what the record shows as most of the testimony." Brown noted witnesses were unable to identify Murdoch in "pictures" they were shown "shortly after the time of the murder." However, Brown also noted Spence identified Murdoch in a live lineup about nine years later.

Brown told the court Murdoch had "always maintained his actual innocence." Brown said he had "no independent evidence to put on today." He did have a "statement" that Murdoch wanted him to read to the court. The prosecutor didn't object to Murdoch reading the statement himself, so he did. Murdoch said he thought about Nantais and his family "and the other folks involved in this case every day." Murdoch told the court, "I'm not guilty of this crime. I was wrongfully convicted. I didn't have anything to do with this." Brown confirmed he had "no other evidence to present at this point in time," so he "rest[ed]."

Citing the opinion on direct appeal, the court noted the "not true" finding on the personal use of a firearm allegation. The court stated it did not agree with "the conclusion . . . that . . . the jury did not believe [Murdoch] shot the victim." The court said, "So I don't find that is definitive that he wasn't an actual killer." The court concluded, "So having reviewed the opinion" and listened to counsel, "I find that there is enough evidence in the court's opinion to find beyond a reasonable doubt that the defendant did, in fact, commit this murder."

10

## DISCUSSION

### 1.  *Section 1172.6*

"In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature significantly narrowed the scope of the felony-murder rule.  It also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law.  Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] section 190.2' (Pen. Code, § 189, subd. (e); see id., § 1172.6; Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10)." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).  See *People v. Curiel* (2023) 15 Cal.5th 433, 440, 448–449.)

Section 1172.6 provides a mechanism by which a person convicted of murder under the former law may be resentenced if he could no longer be convicted of murder because of the changes to section 188.  (*Strong*, *supra*, 13 Cal.5th at p. 708.  See generally *People v. Gentile* (2020) 10 Cal.5th 830, 843; *People v. Lewis* (2021) 11 Cal.5th 952, 959–960.)  Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing at which it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (*Strong*, at pp. 708–709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)  If the court finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6.  (*Strong*, at pp. 708–709; *Vargas*, at p. 951.)

In Senate Bill No. 775 (Senate Bill 775), our Legislature amended the statute, effective January 1, 2022, to clarify what evidence is admissible at the evidentiary hearing. (Stats. 2021, ch. 551, § 2.) The Evidence Code governs the admission of evidence at the hearing, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).) Courts have held that, "by *allowing* consideration of ' "the procedural history" ' in a prior appellate opinion, the Legislature intended to *prohibit* consideration of 'the factual summar[y]' in a prior appellate opinion." (*People v. Vance* (2023) 94 Cal.App.5th 706, 713 (*Vance*), citing *People v. Clements* (2022) 75 Cal.App.5th 276, 292.)

**2.** ***The evidentiary hearing in this case***

The record here does not reflect if the superior court ever expressly found Murdoch had made a prima facie showing of eligibility for resentencing, or issued an order to show cause. However, on the April 4 date, the court referred to "an OSC," heard from both sides, applied the beyond-a-reasonable-doubt standard of proof, and made findings.

Murdoch's complaint on appeal is not that the court failed to conduct an evidentiary hearing, but rather that the court erred in considering only the prosecution's summary of the facts set forth in the opinion on direct appeal. While the prosecutor had submitted a "disk" that contained the clerk's and reporter's transcripts from Murdoch's trial as well as the opinion on direct

12

appeal, the court said it hadn't read them.[6]  Nor, apparently, had the court read the appellate opinion—only "the summary of the facts," presumably referring to the prosecution's November 2020 response to Murdoch's petition.  Plainly aware of the statute's terms as amended by Senate Bill 775, the prosecutor emphasized she was asking the court "only [to] consider the procedural history portion of that opinion."

But Murdoch did not object to the court's consideration of the facts in the appellate opinion.  To the contrary, when asked if he had "any difference of opinion" regarding "the People's summary of the appellate opinion," Murdoch's counsel replied, "No, Your Honor.  It's accurate."  The important point, from counsel's perspective, was the jury's "not true" finding on the allegation that Murdoch had personally used a firearm.

*Vance*, *supra*, 94 Cal.App.5th 706, is instructive.  There, "[a]t the evidentiary hearing, the prosecution requested judicial notice of the record in the underlying case.  The trial court did not expressly rule on the request; however, it said it was relying solely on the facts as stated in [the] opinion in the direct appeal." (*Id*. at p. 711.)  The court denied the petition for resentencing, finding the petitioner was the actual killer or a major participant in the underlying burglary and acted with reckless indifference to human life.  (*Ibid*.)

The appellate court affirmed.  The court cited the "general rule" that "if inadmissible evidence is admitted without objection, it is substantial evidence; the failure to object forfeits its

---

[6]  While the prosecutor asked the court to "receive the disk as Exhibit 1," the record does not reflect the court admitted the disk as evidence.  It is not part of the record on appeal.

13

admissibility." (*Vance, supra*, 94 Cal.App.5th at p. 713, citing Evid. Code, § 353, subd. (a).)  The court continued,

> "Our research has not revealed any legislative history explaining why the Legislature chose to make such an opinion inadmissible as evidence of the factual background of the case. Presumably, however, it was because the record itself is better evidence. . . . [¶] [There] are good reasons to make an appellate opinion inadmissible.  However, they are not good reasons to preclude the trier of fact from considering an appellate opinion under any circumstances.  For example, a petitioner who feels that an appellate opinion is accurate and complete may well prefer to offer it to the trial court, in lieu of the entire record, for convenience.  Presumably that is why defense counsel did not object here." (*Vance*, at pp. 713–714.)

The *Vance* court concluded the petitioner had forfeited any objection to the court's consideration of the opinion on direct appeal.  (*Vance, supra*, 94 Cal.App.5th at p. 714.)  The court also applied a harmless error analysis (see *People v. Watson* (1956) 46 Cal.2d 818, 836), noting petitioner could not "show that, if the opinion had been excluded, he would have enjoyed a more favorable result." (*Vance*, at p. 714.)  The court observed, "Presumably, in that event, the trial court would have considered the record of conviction[7]; the prosecution had done everything it

---

[7]    The hearing in this case took place on a Monday, April 4, 2022.  The court noted the disk had been submitted the previous

14

could to get it to take judicial notice of the record. [The petitioner had] never claimed that [the appellate] opinion misrepresented or omitted any material part of the record." (*Ibid.*)[8]

Here, Murdoch's counsel not only did not object to the court's consideration of the facts in the appellate opinion; he expressly stated the prosecution's summary of those facts was "accurate." On appeal, Murdoch has not identified anything in the prosecution's summary of the facts in the trial court—or of anything in the statement of facts in *Murdoch I*—that is inaccurate.

3. ***In any event, the testimony at Murdoch's trial establishes beyond a reasonable doubt that he is not entitled to relief***

a. *The jury's "not true" finding on the personal use of a firearm allegation precludes the court from concluding Murdoch was the actual killer*

As noted, Spence insisted Murdoch was the man who pointed a rifle at her. Dinardo also testified he saw Murdoch with a rifle, both in the car and at the Horseshoe Bar. Nevertheless, the jury found "not true" the allegation that Murdoch had personally used a firearm in the commission of the crimes, finding true only the "principal armed" allegation.

---

Friday, when the judge was not in court. Had Murdoch objected to the court's reliance on the prosecutor's summary of the fact discussion in the opinion on direct appeal, the court simply could have put the evidentiary hearing over until it had had an opportunity to read the approximately 1,700 pages of record.

[8] The California Supreme Court denied review in *Vance* on October 25, 2023 (S281865).

Courts—including, most recently, our colleagues in Division Two—have held such a "not true" finding by a jury precludes an evidentiary finding at a section 1172.6, subdivision (d)(3) hearing that the petitioner used a weapon. (*People v. Arnold* (2023) 93 Cal.App.5th 376, 379, 385–386 [court erred in finding defendant stabbed the victim after jury found not true an allegation that defendant personally used a knife]; *People v. Henley* (2022) 85 Cal.App.5th 1003, 1007, 1020 [court erred in finding defendant personally used a firearm during robbery in contradiction to jury's not-true finding on allegation defendant personally used a firearm]; *People v. Cooper* (2022) 77 Cal.App.5th 393, 397–398 [court erred in finding defendant possessed and fired a gun in light of jury's acquittal on felon in possession count].) The Attorney General contends *Cooper* is "inconsistent" with our Supreme Court's opinion in *Strong*. The Attorney General has not cited a single published case adopting this view.

However, we need not wade into this controversy. The testimony at Murdoch's trial establishes beyond a reasonable doubt that he was a major participant in the burglary and robbery of the Horseshoe Bar and he acted with reckless indifference for human life.[9]

---

[9] Having erroneously made a finding that Murdoch was the actual killer, the court did not consider the alternative argument that Murdoch was a major participant in the underlying felonies and acted with reckless indifference for human life. We will not disturb on appeal a ruling that itself is correct in law merely because it as given for a wrong reason. (*People v. Smithey* (1999) 20 Cal.4th 936, 971–972; accord *People v. Jones* (2012) 54 Cal.4th 1, 50.)

b.    *Murdoch is ineligible for relief under section 1172.6*

Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not a major participant in the underlying felony who acted with reckless indifference to human life, as section 190.2, subdivision (d) describes it.  (*Strong, supra,* 13 Cal.5th at p. 703.)  In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and again in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*), our Supreme Court identified the overlapping factors for assessing whether the defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for section 189, subdivision (e)(3). These three cases charted a "spectrum of culpability" set forth in two opinions from the United States Supreme Court:  *Enmund v. Florida* (1982) 458 U.S. 782, and *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*).

"[I]t is important to consider where the defendant's conduct falls on the 'spectrum of culpability' that *Enmund* and *Tison* established. . . .  On one end of the spectrum is Enmund, 'the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state.' " (*Scoggins, supra,* 9 Cal.5th at p. 675.)  At the other end of the spectrum are the 19- and 20-year-old defendants in the *Tison* case, who were major participants who acted with reckless indifference to human life, even though neither of them shot any murder victim.  (*Tison, supra,* 481 U.S. at pp. 139–142, 158.) The California Supreme Court has embraced these federal decisions as "instructive."  (*Scoggins,* at p. 675.)

In *Banks* the Supreme Court listed the following factors to consider in determining whether the defendant was a major participant in one of the specified felonies:  "What role did the

17

defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803.)

Reckless indifference to human life has a subjective and an objective element.  As to the subjective element, the defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, and he must consciously disregard the significant risk of death his actions create.  As to the objective element, the risk of death must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.  (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)

In *Scoggins* the Supreme Court listed the following factors to consider in determining whether the defendant acted with reckless indifference to human life: "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize

18

the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; see *Clark*, *supra*, 63 Cal.4th at pp. 618–622.)

The requirements for finding major participation and reckless indifference to human life significantly overlap, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at p. 615; see *People v. Owens* (2022) 78 Cal.App.5th 1015, 1023.) No one of these considerations is necessary, nor is any one of them necessarily sufficient. (*Scoggins*, *supra*, 9 Cal.5th at p. 677; see *Banks*, *supra*, 61 Cal.4th at p. 803.) "We analyze the totality of circumstances" (*Scoggins*, at p. 677; see *People v. Mitchell* (2022) 81 Cal.App.5th 575, 592) to determine whether Murdoch acted with reckless indifference to human life.

We apply the *Banks/Clark/Scoggins* factors to the evidence here:

i. Major participant

*Role in planning.* Murdoch planned the robbery, whether alone or with the second man.[10] Murdoch recruited Dinardo to help, telling Dinardo he (Murdoch) knew a place where they could "make some money." According to Dinardo, "they"—apparently referring to Murdoch and the second man—explained how the event would go down: Dinardo was to go in the front of the bar

---

[10] There is no indication Murdoch ever has identified the second man. Of course, he had no obligation to do so. Murdoch did, however, have a right to "offer new or additional evidence" at the hearing. (§ 1172.6, subd. (d)(3).) Murdoch has never claimed that the second man was the shooter, that he didn't know the second man was armed, or that the second man misled him about the nature of the enterprise. Murdoch told the court only that he was innocent and had nothing to do with the crimes.

and then, when Murdoch and the second man had "everyone covered," to grab the cash.

*Supplying weapons.* As we have said, the jury's finding on the personal use enhancement bars a conclusion that Murdoch personally used a firearm. While Dinardo testified he saw Murdoch with the rifle in the car, there is no evidence of where the rifle came from or where the shooter—if the second man was the shooter—got the murder weapon. And while someone stabbed the second victim with a knife, there is no evidence as to where that knife came from, other than Dinardo's testimony that "they" told him "the one guy was going to carry a knife."

*Awareness of danger posed by nature of the crime, weapons used, or past experience or conduct of other participants.* There is no evidence as to whether Murdoch had committed crimes with the second man or knew him to be dangerous.

*Defendant's presence at the scene of killing, in a position to facilitate or prevent the actual murder; role of defendant's own actions or inaction in the death.* Murdoch was at the scene from start to finish. Murdoch recruited Dinardo to come along, telling him "we need your help." Murdoch, the second man, and Dinardo rode in the same car to the bar and parked in back. Shortly after Dinardo and the second man entered the bar as planned, Murdoch entered from the rear and said, "Don't nobody move." There is no evidence Murdoch tried to restrain the shooter. (See *In re McDowell* (2020) 55 Cal.App.5th 999, 1012 (*McDowell*) [defendant "was present at the scene of the shooting and had an opportunity to restrain [shooter], or otherwise intervene on [victim's] behalf"]; *People v. Montanez* (2023) 91 Cal.App.5th 245, 273 (*Montanez*) [defendant's "presence at the crime scene afforded him the opportunity to observe additional facts showing the crimes posed a serious risk of danger to" the victim].)

*Actions after the use of lethal force.* After the shooter shot Nantais and Dinardo got the cash out of the register, Murdoch made no effort to check on Nantais, aid him, or summon help—even anonymously. Instead, Murdoch returned to the waiting car with the second man and Dinardo, later splitting the proceeds with them and getting his $50 share.

ii. Reckless indifference to human life

*Use of guns or knowledge a gun would be used.* When Murdoch recruited Dinardo to help with the robbery, Dinardo asked how they were going to do it and "they replied, well, with a gun."

*Number of weapons ultimately used.* The perpetrator used a rifle and a second perpetrator—the one who stabbed Hall—used a knife. Hall testified he saw a person to his right with a small handgun. The record doesn't contain further information about this second gun.

*Physical presence at the scene and opportunity to restrain the crime.* Again, Murdoch was present during the robbery and the shooting. He could have tried to stop the shooter or warn Nantais. The United States Supreme Court has "stressed the importance of presence to culpability." (*Clark, supra,* 63 Cal.4th at p. 619, citing *Tison, supra,* 481 U.S. at p. 158.) " '[T]he defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts.' " (*Clark,* at p. 619. See *Montanez, supra,* 91 Cal.App.5th at p. 282 [defendant "was physically present at the crime scene and had an opportunity to restrain his cohorts and aid the victims"]; *People v. Nieber* (2022) 82 Cal.App.5th 458, 478–479 [defendant present at robbery; didn't intervene to prevent murder]; *McDowell, supra,* 55 Cal.App.5th at p. 1014 [defendant "was present when the violence ensued but took no steps to prevent it"].)

21

*Duration of interaction between perpetrators and victim.*
The record does not reveal the precise amount of time that passed
from the moment Murdoch, the second man, and Dinardo arrived
at the bar and parked in the rear until they fled with the cash.
It was sufficient, however, for the three of them to go into the
bar, for Murdoch to say, "Don't nobody move" and "This is a
stick-up or a robbery," for the second man then to shoot Nantais,
for Dinardo then to jump over the bar, struggle to get the
cash register open, finally get it open and grab the cash,
and for the threesome then to leave the bar, return to the car,
and drive away. This sequence of events was not instantaneous
or fleeting.

*Defendant's knowledge of confederate's propensity for
violence or likelihood of using lethal force.* Again, there is no
evidence on this point.

*Efforts, if any, to minimize risks of violence during the
felony.* Murdoch made no such efforts. Again, Murdoch was
instrumental in the planning of the robbery and he was present
throughout the perpetration of the crime. There is no evidence
he did anything to intervene or dissuade the second man from
shooting Nantais. (Cf. *Scoggins*, *supra*, 9 Cal.5th at p. 678
[defendant, who remained at nearby gas station during
the course of the crime, "was not in a position to restrain"
the shooter]; *Banks*, *supra*, 61 Cal.4th at p. 807 [defendant
"did not see the shooting happen, did not have reason to know
it was going to happen, and could not do anything to stop" it];
*In re Bennett* (2018) 26 Cal.App.5th 1002, 1025–1026 [defendant
was "across the street" and "did not see or know if anyone was
shot or hurt"].) Murdoch had the opportunity to intervene.
He just chose not to.

"If lethal force is not part of the plan, 'absence from
the scene may significantly diminish culpability for death.' "

(*McDowell*, *supra*, 55 Cal.App.5th at p. 1012, quoting *Banks*, *supra*, 61 Cal.4th at p. 803, fn. 5.) " 'As a corollary, there may be significantly greater culpability for accomplices who are present.' " (*McDowell*, at p. 1012, quoting *In re Loza* (2017) 10 Cal.App.5th 38, 50; accord, *Tison*, *supra*, 481 U.S. at p. 158. Cf. *In re Miller* (2017) 14 Cal.App.5th 960, 963–964 [defendant was not "present at the scene when the shooting occurred"]; *In re Bennett*, *supra*, 26 Cal.App.5th at pp. 1008–1009 [defendant helped plan robbery of drug dealer and called victim to set up meeting, but was urinating in parking lot when two cohorts crossed the street, went into the victim's apartment, and shot him; defendant didn't even know victim had been killed until later].)

Taking all of these factors into consideration, we conclude the evidence presented at Murdoch's trial establishes beyond a reasonable doubt that he was a major participant in the burglary and robbery of the Horseshoe Bar and he acted with reckless indifference for human life.

        c.    *If the trial court failed to consider Murdoch's age, any error was harmless*

Murdoch was about 11 weeks shy of his twenty-sixth birthday when he committed the crimes in this case.[11]  Murdoch contends he "was a youth offender" on the date of the offense and the court "erred in not considering [his] age when evaluating whether [he] acted with reckless indifference to human life."

On August 31, 2021, Division Three of the First District Court of Appeal issued *In re Moore* (2021) 68 Cal.App.5th 434. In that case, the defendant was 16 at the time of the shooting.

---

[11]  As noted, the crimes took place on May 17, 1983.  Murdoch turned 26 on August 6, 1983.

23

The court, " 'upon consideration of the factors identified in *Clark*[,] [*supra*, 63 Cal.4th 522,] together with Moore's youth at the time of his offenses,' " "found insufficient evidence that Moore acted with reckless disregard to human life." (*People v. Oliver* (2023) 90 Cal.App.5th 466, 487 (*Oliver*).)

Murdoch's counsel didn't cite *Moore*, nor did he mention Murdoch's age or ask the court to consider age. Putting aside any issue of forfeiture, any failure by the trial court to consider Murdoch's age is harmless in any event. "Presumably, the presumption of immaturity weakens as a defendant approaches 26. More importantly, . . . the case law discussing the differences in brain development among youthful offenders (in contrast to their adult counterparts) stress[es] two areas of divergence: (1) their relative impulsivity; and (2) their vulnerability to peer pressure. (See, e.g., *Miller*[ ] [*v. Alabama* (2012)] 567 U.S. [460,] 461.) There is no evidence in this case that [Murdoch's] criminal behavior was motivated by either of these two factors." (*Oliver*, *supra*, 90 Cal.App.5th at pp. 488–489.)

As in *Oliver*, "we are not presented here with a situation where a youthful offender was swept up in circumstances beyond his or her control that led to an unintended death." (*Oliver*, *supra*, 90 Cal.App.5th at p. 489.) Murdoch and the second man had a plan to rob the bar and they carried out their plan, recruiting Dinardo to assist.

## DISPOSITION

We affirm the trial court's order denying Charles Franklin Murdoch, Jr.'s petition for resentencing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.